IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 15, 2012

## WILLIAM K. PAULSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 93532     Jon Kerry Blackwood, Judge**

**No. E2011-01772-CCA-R3-PC - Filed December 5, 2012**

The petitioner, William K. Paulson, appeals the post-conviction court's denial of post-conviction relief from his convictions of reckless endangerment, felony evading arrest, driving without a license, and violating the state registration law.  On appeal, the petitioner contends that the post-conviction court erred in determining that he received effective assistance of counsel.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

William J. Taylor, Knoxville, Tennessee, for the appellant, William K. Paulson.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Kenneth F. Irvine, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The proof at trial revealed that on the morning of March 6, 2003, the petitioner was stopped by Officer John Day because the license plate on the petitioner's vehicle was not illuminated.  State v. William Keith Paulson, No. E2007-02621-CCA-R3-CD, 2009 WL 3047004, at *1 (Tenn. Crim. App. at Knoxville, Sept. 24, 2009).  After other officers arrived at the scene to assist, the petitioner made a U-turn and drove away, running at least two red lights.  Id. at *2.

During the ensuing pursuit, the petitioner refused to stop. Id. Once, the petitioner almost collided with a Tennessee Highway Patrol officer. Id. Afterward, the petitioner pulled into a parking lot and appeared to make contact with the rear bumper of a parked pickup truck. Id. The petitioner continued to elude capture by driving southbound in a northbound lane of traffic. Id. Eventually, the petitioner increased his speed, which caused his vehicle to roll onto a median and land upside down. Id. at *3. After the crash, the petitioner crawled out the window and fled on foot, but he was ultimately apprehended. Id.

At trial, the petitioner acknowledged that he fled from the officers, but he maintained that some of the officers were "somewhat hostile" toward him. Id. He said that he initially sped away from the officers instead of exiting his vehicle because he did not like the way one of the officers spoke to him. Id. The petitioner further maintained that he chose to leave at that time, explaining that he had "prior bad experiences with law enforcement officers." Id.

The jury found the petitioner guilty of reckless endangerment, two counts of felony evading arrest, misdemeanor evading arrest, a violation of the driver's license law, and a violation of the state registration law, and the trial court imposed an effective eighteen-year sentence. Id. On direct appeal, this court merged the petitioner's two felony evading arrest convictions and his misdemeanor evading arrest conviction into a single conviction for felony evading arrest but affirmed the convictions and sentences in all other respects. Id. at *1.

Thereafter, the petitioner filed a pro se petition for post-conviction relief, alleging, in pertinent part, that his trial counsel was ineffective by failing to raise the issue of the petitioner's "mental problems" at trial. Counsel was appointed, and an amended post-conviction petition was filed, again alleging that trial counsel was ineffective by failing to raise the issue of the petitioner's "mental instability" at trial. The petitioner contended that he was advised by counsel to not mention his mental problems at trial.

The petitioner attached exhibits to his petition to support his claims. Exhibit 1 was the order appointing trial counsel to the petitioner's case and the indictment charging the petitioner. Exhibit 2 was an August 7, 2002 letter written by Michael B. Lange, an "Assistant Legal Defender" from Pima County, Tucson, Arizona, to Dave Mitchell, a "Clinical Liason." An attachment was included that listed the petitioner's medications. The attachment reflected that the petitioner was daily administered one-half of a 100-milligram tablet of Seroquel and one tablet each of naproxen, a multi-vitamin, grape seed extract, vitamin C, and fish oil concentrate.

Exhibit 2 also contained a letter documenting a June 22, 2002, "Rule 11 Psychiatric Evaluation" of the petitioner by Dr. Herschel D. Rosenzweig of Tucson, Arizona. According

to the letter, the petitioner was evaluated after he was charged with "Possession of a Narcotic Drug, Aggravated Criminal Damage and Possession of Drug Paraphernalia." The petitioner told Dr. Rosenzweig that he was taking 500 milligrams of Seroquel daily. Dr. Rosenzweig's letter also stated that the petitioner had a history of "paranoid ideation" consisting of "visual hallucinations or distortions" which led him to believe that police were pursuing and trying to kill him. Dr. Rosenzweig stated that the petitioner suffered from paranoid schizophrenia and that it appeared to be under control with the use of antipsychotic medication. Dr. Rosenzweig concluded that the petitioner was competent to stand trial for the Arizona charges.

The petitioner's Exhibit 3 was a September 27, 2002 minute entry from the Pima County Arizona Superior Court, reflecting that the petitioner pled "guilty except insane" to possession of a narcotic drug and aggravated criminal damage and that Dr. Rosenzweig's report supported the plea.

Exhibit 4 was a letter documenting a psychological evaluation of the petitioner by Todd C. Flynn, Ph.D., on September 14, 2000, in Tucson, Arizona. Dr. Flynn stated that the petitioner's "history, collateral information, presentation on interview and psychological test results are consistent with some form of severe emotional disorder." However, Dr. Flynn said that "[t]he disorder does not appear to affect [the petitioner's] ability to come to a rational and factual understanding of the legal procedure in criminal Court." Exhibit 5 was a list of the exhibits at the trial in the instant case, which consisted of eight photographs.

Exhibit 6 was a February 16, 2006 letter to Knox County Criminal Court Judge Richard Baumgartner from Dr. Clifton R. Tennison, Jr., a certified forensic examiner from the Helen Ross McNabb Center. In the letter, Dr. Tennison stated that the petitioner was competent to stand trial and that an insanity defense could not be supported for the charges of aggravated burglary, theft, and assault, which were not the underlying charges in the instant case. Dr. Tennison recommended that the petitioner continue taking medication to maintain competency. Exhibit 7 was a copy of the jury instructions from the trial in the instant case.

In his petition, the petitioner argued that trial counsel should have used the information in the exhibits regarding his mental problems to defend the evading arrest charge. The petitioner conceded that Exhibit 6, for the most part, did not support his post-conviction claims. However, he argued that Dr. Tennison's recommendation that the petitioner continue receiving mental health treatment and medication in order to remain competent could be construed to mean that Dr. Tennison believed the petitioner would not be competent if he did not take his medication. The petitioner asserted that he was not taking his medication when he was arrested for the instant charges.

The petitioner also argued that trial counsel was ineffective by failing to raise the defense of insanity. The petitioner contended that evidence of his mental defect could have demonstrated to the jury that he resisted arrest and evaded police because he feared he would be injured.

At the post-conviction hearing, the parties agreed to allow the court to determine the issue based solely upon the pleadings and the attached exhibits. In a written order, the post-conviction court found:

> These mental records from Arizona reveal that the Petitioner was competent to stand trial for the charges filed against him in that State. Dr. Rosenzweig's evaluation indicated that Petitioner did suffer from various mental disorders[,] including paranoid schizophrenia. Dr. Rosenzweig reports a long history of psychotic episodes in which Petitioner believed that the police were attempting to kill him. Dr. Rosenzweig's report also indicated that the Petitioner had been administered high doses of anti[-]psychotic medication and while under this medication he would be in good control of himself. The psychotic episodes occur when he is off his medicine. Dr. Rosenzweig opined that Petitioner appreciated the wrongfulness of his criminal act and was competent. Dr. Rosenzweig also reported that the Petitioner was addicted to [il]licit drugs. The reports of Dr. Flynn reflect a long use of severe drug use and a severe emotional disorder. It would appear to the Court that these reports indicate that the Petitioner suffers from a mental disorder but it is controllable with medication. However, equally clear is Petitioner's psychotic episodes in which he believes the police are after him. On February 6, 2006, Petitioner was evaluated at Helen Ross McNabb Center for an evaluation of his sanity and competency. Dr. Clifton R. Tennison opined that Petitioner was both competent to stand trial[] and that a defense of insanity could not be supported for the charges that are the basis of this Petition.

The court further noted that the record was silent concerning any possible discussions between the petitioner and counsel concerning his mental health and that there was no indication the petitioner requested trial counsel use the evidence of his mental defect at trial. The court opined that introducing proof of the petitioner's mental history, which was intertwined with his prior criminal history, could have damaged the petitioner's case. The

court determined that "[t]he [p]etition appears to be nothing more than second-guessing or hindsight." Therefore, the court denied the petition, finding that the petitioner had failed to establish his claim of ineffective assistance of counsel by clear and convincing evidence. On appeal, the petitioner challenges this ruling.

## II. Analysis

### A. Timeliness of Notice of Appeal

Initially, we note that the State contends that the appellant's notice of appeal was untimely. Rule 4(a) of the Tennessee Rules of Appellate Procedure instructs that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." In the instant case, the post-conviction court's order denying relief was filed on July 6, 2011. The time for filing the notice of appeal expired on August 5, 2011, a Friday. However, the petitioner's notice of appeal was filed on August 8, 2011, the following Monday. Therefore, the petitioner's notice of appeal was untimely. Regardless, Rule 4 provides that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). We have chosen to waive the timely filing to address the petitioner's concerns.

### B. Post-Conviction Claims

To be successful in his claim for post-conviction relief, the petitioner must prove factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law

purely de novo.  Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

The petitioner maintains that trial counsel was ineffective by failing to raise an insanity defense or to present proof of his "mental instability" to establish the "affirmative defense" of "resistance by party about to be injured." Tennessee Code Annotated section 39-11-501(a) provides:

> It is an affirmative defense to prosecution that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature or wrongfulness of such defendant's acts. Mental disease or defect does not otherwise constitute a defense. The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Further, Tennessee Code Annotated section 38-2-101 states that "[l]awful resistance to the commission of a public offense may be made by the party about to be injured, or by others." Our code further provides that the

> [r]esistance sufficient to prevent the offense may be made by the

-6-

party about to be injured to prevent an:

(1) Offense against the party's person; or

(2) Illegal attempt by force to take or injure property in the party's lawful possession.

Tenn. Code Ann. § 38-2-102.

The petitioner contends that the reports by Dr. Rosenzweig and Dr. Flynn specifically address the petitioner's "paranoid mental defect pertaining to interaction with police officers" and support a defense for his actions that resulted in the instant charges. The petitioner asserts that his mental issues were not investigated or raised by counsel.

The exhibits submitted by the petitioner reflect that he has been repeatedly found competent to stand trial. Additionally, Dr. Rosenzweig's report reflected that the petitioner's mental health issues were controlled by medication. Although the petitioner asserts in his post-conviction petition that he was not taking his medication at the time of the offenses, "[a]llegations contained in pleadings are not evidence." State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). The petitioner failed to present any proof supporting his claims, such as testimony from counsel or medical proof regarding the petitioner's mental state at the time of the instant offenses. The post-conviction court found that "[t]he [p]etition appears to be nothing more than second-guessing or hindsight." This court has held that "[f]or purposes of proving an ineffective assistance of counsel claim, proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit." Owens v. State, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999). We agree with the post-conviction court that the petitioner failed to establish his claim of ineffective assistance of counsel by clear and convincing evidence.

### III. Conclusion

In sum, we conclude that the post-conviction court did not err in denying the petitioner post-conviction relief. Therefore, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-7-